Eugene W. SLATTERY,
Plaintiff–Appellant,

v.

SWISS REINSURANCE AMERICA
CORP., Defendant–Appellee.

No. 00–7787.

United States Court of Appeals,
Second Circuit.

Argued Jan. 11, 2001.

Decided May 3, 2001.

As Amended June 6, 2001.

88

Patrick W. McGinley, Finder & Cuomo, LLP, New York, NY, for appellant.

Francis P. Alvarez, Jackson, Lewis, Schnitzler & Krupman, Stamford, CT, for appellee.

Before VAN GRAAFEILAND, WINTER, CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Eugene Slattery ("Slattery") appeals from the district court's (Brieant, *J.*) grant of summary judgment to Swiss Reinsurance America Corp. ("Swiss Re") on his claims of age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law ("NYSHRL"). Specifically, he contends that defendant violated the ADEA when it terminated him on February 1, 2000. We affirm.

## BACKGROUND

In 1993, Swiss Re hired Slattery, then 46, as an Account Executive/Assistant Vice

President in the New York Office's Regional Treaty Marketing Department. In March 1996, Swiss Re's Swiss parent company, under the leadership of its new chairman, Walter Kielholz, reorganized the company. One month later, as part of that reorganization, Maria Wilcox (age 42) promoted Slattery (age 49) to Business Development Manager ("BDM") in the Business Development Unit for the Northeast Region ("Northeast BDU"). At that time, Wilcox reported to Darrius Baker (age 50), the Executive Vice President of the Regional/Specialty Division.

By February 1997, Wilcox was showing signs of dissatisfaction with Slattery's work. In July 1998, Wilcox and Baker reassigned Slattery from his position as BDM to a position as Senior Account Executive. Slattery's responsibilities were diminished, but his salary remained the same. On July 1, 1999, Slattery was placed on probation. In September 1999, Wilcox was assigned to a new position, and Slattery began reporting to Clay Bassett. Slattery's probation was extended to the end of 1999, and then again to February 1, 2000. On February 1, Bassett terminated Slattery.

Slattery filed a complaint with the Equal Employment Opportunity Commission, received a right to sue letter, and brought this action in federal court. The primary basis for Slattery's case consisted of comments made by his superiors at Swiss Re. Most prominently, Slattery relied on a 1998 interview that Kielholz gave to *Information Strategy*. This interview was subsequently reported in an article which stated:

> Growth and performance are important but not the only marks of success, according to Kielholz. Since taking the helm almost two years ago, Kielholz has been concerned to dispel the perception of Swiss Re as a multinational collection of grey suits and encourage young dynamic staff to join the company. The average age has dropped significantly over the last few years to 39. Kielholz firmly believes that a younger workforce will be more in tune with the knowledge worker spirit. However, Kielholz's most important indice remains IQ.... The fact that Kielholz is looking to hire rather than fire staff is testimony to his faith in the knowledge-driven business.

In addition, Slattery pointed to some generalized remarks made by superiors at different times during Slattery's employment that he argues indicate age discrimination. Finally, Slattery offered his personal observations about the post-reorganization comings and goings of other employees of various ages. Swiss Re both disputed the significance of these allegations and presented the district court with an extensive record of its increasing dissatisfaction with Slattery's work.

As to Kielholz's interview, Swiss Re argued that (1) the statement itself does not indicate discrimination because it does not show a causal connection between the change in average age and age discrimination; (2) there is no evidence that Kielholz participated in any of Slattery's job actions; and (3) there is no indication that Wilcox, Baker, or Bassett knew of Kielholz's comments.

Moreover, according to Swiss Re, Slattery's work began to decline in 1997, shortly after his promotion, and this was documented in Slattery's performance evaluations. Thus, in his February 1997 evaluation, Slattery was found to "meet standards" but to need improvement in visiting branch offices and in his commitment to "target dates and deliverables." In February 1998, Slattery again "met standards" but suffered from the same problems as in the previous year. In addition, at about this time, he was told that he

needed to improve his new business production. In July 1998, Slattery's position changed from BDM to Senior Account Executive in order to relieve him of management responsibilities and to allow him to focus on producing new business. He produced no new business in 1998, which proved to be Swiss Re's best year, up to that time, for new business production. Slattery's performance review in January 1999 stated that he "partly meets expectations." But it noted problems with the timeliness of Slattery's reports, lack of leadership qualities, and, most critically, his continued inability to generate new business. It was, Swiss Re asserted, due to this failure to generate new business, the tardiness of his reports, the poor quality of those reports, and the weakness of his leadership that Slattery was put on probation in July 1999.

Slattery again produced no new business in 1999, which topped 1998 as Swiss Re's most productive year. And on January 4, 2000, Slattery was told that if he did not produce new business before the end of the month he would be terminated. He failed to produce any new business by the deadline, and Bassett terminated him.

In response to Swiss Re's offer of a legitimate business reason for his termination, Slattery produced evidence of pretext. The main alleged reason for which Slattery was fired was his failure to produce new business in 1998, 1999, and the beginning of 2000. Slattery claimed, however, that in 1996 and 1997 he produced more business than anyone else in his unit. Moreover, he contended that no one in his unit produced new business during the relevant time period, and yet he was the only one fired. He also argued that the same evidence that made up his *prima facie* case of discrimination also served to demonstrate pretext.

In addition, Slattery claimed that Swiss Re had retaliated against him for lodging a complaint with the EEOC. Swiss Re replied that the adverse employment actions occurred too long after the lodging of the complaint to raise an inference of discrimination: the probation having occurred eight months after Slattery filed his complaint with the EEOC, and the termination some seven months after that. And Swiss Re also pointed out that Slattery was fired after "an extensive period of progressive discipline" that began before Slattery lodged his complaint. During this time, "Swiss Re changed his supervisor, twice extended his probation and gave him a final chance to find one well-qualified prospect."

Defendant moved for summary judgment. According to the district court, to make out a *prima facie* case, Slattery had to show "(1) that he belongs to a protected class, (2) that he was performing his duties satisfactorily, (3) that he was discharged, and (4) that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997). The court found (1) that Slattery had not demonstrated that he was "satisfactorily" performing his duties, and (2) that there was no nexus between Kielhoz's reported remarks in the 1998 interview and Slattery's probation or discharge. This was because Kielholz was not involved in any of Slattery's personnel decisions and the court saw no indication that those who did make such decisions knew of, or acted upon, Kielholz's statements.

The court went on to conclude that even if Slattery had established a *prima facie* case, Swiss Re had provided a legitimate, non-discriminatory reason for Slattery's discharge: its dissatisfaction with his work. "Neither this court nor a jury may

determine[ ] on these facts that a requirement for a new business representative to produce at least *some* new business over a two year period is unreasonable and therefore must be pretextual." Having thus determined that Slattery had failed to demonstrate pretext, the court granted the defendant's motion for summary judgment on the issue of age discrimination.

The district court also granted summary judgment to Swiss Re on Slattery's retaliation claim. Although the court found that Slattery had engaged in protected activity, that Swiss Re knew about it, and that Slattery was placed on probation and fired, it concluded that there was no causal connection between the activity and the adverse employment actions.

Slattery appeals the grant of summary judgment for Swiss Re. We affirm, but on somewhat different grounds from those given by the district court.[1]

## DISCUSSION

We review a grant of summary judgment *de novo,* resolving all ambiguities and drawing all inferences in favor of the nonmoving party. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128–29 (2d Cir.1996). Summary judgment is appropriate when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. *See Scaria v. Rubin,* 117 F.3d 652, 653 (2d Cir.1997).

*Discrimination*

In assessing ADEA claims, we apply the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. Under that framework, a plaintiff must satisfy the minimal burden of making out a *prima facie* case of discrimination; the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions; and the final burden rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual but also that the defendant discriminated against the plaintiff. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In order to make out a *prima facie* case of age discrimination, Slattery had to demonstrate that he was "(1) within the protected age group; (2) qualified for the position; (3) discharged; and (4) that such discharge occurred under circumstances giving rise to an inference of discrimination." *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir.2000).

As an initial matter, the district court overstated the requirements for a *prima facie* case. Instead of requiring Slattery to demonstrate that he was "qualified for the position," *id.,* it demanded a showing that "he was performing his duties satisfactorily." We have ourselves used similar language. *See McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir. 1997). But in doing so we have not, of course, raised the standard set by the Supreme Court for what suffices to show qualification. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Thus a mere variation in terminology between "qualified for the position" and "performing ... satisfac-

---

1. *See Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997) ("It is beyond cavil that an appellate court may affirm the judgment of the district court on any ground appearing in the record.").

torily" would not be significant so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer. The qualification prong must not, however, be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision. As we have repeatedly held, the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he "possesses the basic skills necessary for performance of [the] job." *Owens v. New York City Housing Auth.,* 934 F.2d 405, 409 (2d Cir.1991) (internal quotation marks omitted). As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw. *See Gregory v. Daly,* 243 F.3d 687, 695–96 (2d Cir.2001).

In this case, the court's use of the "satisfactory" rather than the "qualified" language became the basis for a heightened requirement. The district court found that because Swiss Re was dissatisfied with Slattery's work performance, Slattery had not established the second element of a *prima facie* claim. This was error. Although the defendant did properly offer up its dissatisfaction with Slattery's work performance as its legitimate business reason for discharge, there is no basis for the district court's conclusion that Slattery lacked even minimal qualification for a job whose duties he had been performing for seven years.

█ We disagree as well with the district court's assessment of the most signifi-

cant piece of evidence Slattery presents in support of his *prima facie* case: Kielholz's statement that he intended to make the image of Swiss Re younger and that he had in fact reduced the average employee age to 39.[2] Because Slattery had not demonstrated either that Kielholz had been personally involved in the employment decisions regarding Slattery or that those who had been so involved had known about the Kielholz statement, the district court excluded the statement from consideration.

We think the statement is relevant to Slattery's *prima facie* case. We find convincing the Third Circuit's reasoning in *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43 (3d Cir.1989). In that case, a former employee testified that a senior vice president of defendant company had told him that "Westinghouse Credit was a seniority driven company with old management and that's going to change, 'I am going to change that.'" *Id.* at 54. The *Lockhart* court placed great emphasis on the statement:

> When a major company executive speaks, "everybody listens" in the corporate hierarchy, and when an executive's comments prove to be disadvantageous to a company's subsequent litigation posture, it can not compartmentalize this executive as if he had nothing more to do with company policy than the janitor or the watchman.

*Id.* The Third Circuit has since reaffirmed this reasoning in a number of cases. *See Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 333 (3d Cir.1995) ("We have held that a supervisor's statement about the employer's employment practices or managerial policy is relevant to show the corporate culture in which a com-

---

**2.** The other statements Slattery points to as evidence of discrimination are all either age-neutral on their face or "stray remarks" unre-lated to his discharge. Accordingly, we need not discuss them.

pany makes its employment decision, and may be used to build a circumstantial case of discrimination."); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 642 (3d Cir.1993) ("The court may also consider as circumstantial evidence the atmosphere in which the company made its employment decisions. One could infer ... that management permitted an atmosphere of racial prejudice to infect the workplace."); *see also Hunt v. Tektronix, Inc.*, 952 F.Supp. 998, 1006 (W.D.N.Y.1997) (citing *Lockhart* ).

Statements about changing the corporate culture made by top executives surely have probative value as to possibly discriminatory acts on the part of the lower level supervisors. Slattery contends that Kielholz's comment shows that the Chief Executive of Swiss Re was intent on making its employees younger, and that his firing demonstrates that those in charge, down the line, acted accordingly. We hold that such a statement from a top executive in the corporate hierarchy can be enough to establish a *prima facie* case—that is, to raise an inference of discrimination sufficient to shift the burden of explanation onto the defendant. In this case, however, in light of Kielholz's statement that he was "looking to hire rather than fire staff," one may well doubt that a *prima facie* case exists.

█ Assuming *arguendo* that it does, however, we agree with the district court that Swiss Re easily met its burden of demonstrating a legitimate, non-discriminatory reason for its actions. Swiss Re's dissatisfaction with Slattery's performance, and in particular with his failure to bring in new business, is extremely well-documented. It is manifest from a reading of the record that Slattery went about his job differently from the way his superiors would have liked. For example, he maintained as clients large firms with small business volume in the hopes of generating more business from them, while Swiss Re repeatedly urged him to generate new clients with initially larger volumes. Not only did Swiss Re, between 1996 and 1999, become gradually and increasingly dissatisfied with Slattery's performance in many respects, but Slattery's supervisors made it absolutely clear that Slattery's future employment depended upon his ability to bring in new business in 1998 and 1999—a not unreasonable request. Slattery himself concedes that he did not bring in any new business after 1997. Certainly Slattery's late reports, failure to lead, and incapacity to bring in new business—especially in the face of an express requirement that he do so—were legitimate business reasons for his probation and termination.

Under *McDonnell Douglas*, the burden then shifts back to Slattery to demonstrate that Swiss Re's proffered explanation was pretextual. The district court found that Slattery did not prove pretext because, as Slattery conceded, he did not produce any new business in 1998 or 1999. But Slattery contends that Swiss Re's failure to dispute Slattery's claim that he was the largest producer of new business in the Northeast BDU suffices to show pretext at least sufficiently to raise a fact question. And, although Swiss Re claims that 1998 and 1999 were its most productive years, Swiss Re does not point to evidence about the performance of the Northeast BDU. Nor does Swiss Re dispute Slattery's claim that none of his coworkers in the BDU produced any new business in 1998 or 1999 either, and that none of *them* was fired.

Even were we to find this evidence sufficient to raise a fact question as to pretext, such a determination would not end our inquiry. A case-by-case examination is warranted to determine whether the *prima facie* showing plus pretext could satisfy the plaintiff's "ultimate burden of persuad-

ing the trier of fact that the defendant intentionally discriminated against the plaintiff." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. Having undertaken such an examination here, we conclude that the plaintiff's proffered evidence fails to warrant a jury trial.

The problem for Slattery is that the Kielholz statement on which he relies heavily, considered in the context of the case as a whole, and even combined with the possibility that Swiss Re's statements about lack of new business were pretextual, does not in the end carry the burden Slattery bears of showing he was treated adversely for discriminatory reasons. *Cf. James v. New York Racing Assoc.*, 233 F.3d 149 (2d Cir.2000); *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir.2000); *Fisher v. Vassar*, 114 F.3d 1332 (2d Cir. 1997) (*in banc*).

As part of the very reorganization that Slattery contends began Swiss Re's discriminatory policy, Slattery was himself elevated from Account Executive/Assistant Vice President in New York's Regional Treaty Marketing Department to Business Development Manager in the Business Development Unit for the Northeast Region. And, not only was Slattery thus promoted in 1996 at the age of 49, but his supervisors at the time were also members of the protected class. Wilcox was 42, and Baker was 50. As a result, while an executive's comments revealing a policy of discrimination can give rise to an inference of discrimination, where, as here, the employee has actually benefitted from the introduction of a new policy, that statement cannot bear much weight. Moreover, although other employees who had failed to produce new business had not been fired, Swiss Re's legitimate business reasons for Slattery's termination went beyond his failure to produce new business. Slattery's supervisors were dissatisfied with the lateness of his reports, the quality of those reports, and his failure to provide leadership. And, with regard to these concerns,

Slattery has not demonstrated that his coworkers were similarly situated. Finally, it is clear that *Swiss Re* was dissatisfied with Slattery's responses to its demands that he be more aggressive in seeking new clients from high volume businesses.

We conclude that, even assuming that a jury could believe that by itself the failure to produce new business could not have sufficed to make Swiss Re fire Slattery, the evidence presented by Slattery is not enough to permit a jury to find that the real reason he was fired was his age. We have repeatedly held that, in the end this burden rests on the plaintiff, *James*, 233 F.3d 149; *Schnabel*, 232 F.3d 83; *Fisher*, 114 F.3d 1332, and, as a matter of law, Slattery has not met this ultimate burden.

*Retaliation*

We analyze a claim of retaliatory discharge under the familiar three-part burden shifting analysis that was also first set forth in *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In order to make out a *prima facie* case of retaliation, a plaintiff must show by a preponderance of the evidence "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Holt*, 95 F.3d at 130 (internal quotation marks omitted). Moreover, "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the *prima facie* stage is de minim[i]s." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994) (alterations in original) (internal quotation marks omitted). Once the plaintiff has established a *prima facie*

case, defendant must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the plaintiff to demonstrate pretext. *See Tomka,* 66 F.3d at 1308.

It cannot be questioned that Slattery has established the first two elements of a *prima facie* case. (1) Swiss Re was notified of Slattery's complaint to the EEOC in January 1999, and Slattery's protected activity was, therefore, known to the company. (2) Slattery's probation and termination constituted adverse employment actions. The crucial issue is whether Slattery has made out the third element: a causal nexus between his complaints to the EEOC and in federal court and Swiss Re's adverse employment actions.

██ The only basis Slattery suggests for finding such a nexus is time. He claims that his placement on probation and his subsequent firing followed his complaints closely enough to support an inference of retaliation. It is, of course, true that temporal proximity can demonstrate a causal nexus. *See Manoharan v. Columbia Univ.,* 842 F.2d 590, 593 (2d Cir.1988). But in this case the adverse employment actions were both part, and the ultimate product, of "an extensive period of progressive discipline" which began when Swiss Re diminished Slattery's job responsibilities a full *five months prior* to his filing of the EEOC charges. Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.

## CONCLUSION

We have considered all of Slattery's arguments and find them without merit. Ac-cordingly, the judgment of the district court is AFFIRMED.