**Dorenda T. CANTY, Plaintiff,**

**v.**

**ELECTRIC BOAT CORP., Defendant.**

**No. 3:98CV2201 GLG.**

United States District Court, D. Connecticut.

resolve all ambiguities and draw all inferences in favor of the non-moving party. Moreover, in a case such as this where the plaintiff is *pro se*, the Court is required to read the pleadings of a *pro se* plaintiff liberally and interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Thus, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper. *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir.2000).

Dorenda T. Canty, Washington, DC, pro se.

Douglas McClain Peachey, General Dynamics/Electric Boat Division, Groton, CT, Neal J. McNamara, Holland & Knight, Providence, RI, for defendant.

### MEMORANDUM DECISION

GOETTEL, District Judge.

In this hiring discrimination case brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, defendant has moved for summary judgment [**Doc. # 32**]. For the reasons set forth below, defendant's motion is denied.

### SUMMARY JUDGMENT STANDARD

In ruling on a motion for summary judgment, the Court is tasked with determining whether a genuine dispute over material facts exists between the parties that must properly be submitted to a jury, or, where no issues of material fact are found, whether the moving party is entitled to judgment as a matter of law. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001). When examining the evidence, this Court is required to

### FACTUAL BACKGROUND

At all times relevant to plaintiff's complaint, defendant Electric Boat was a division of General Dynamics Corporation. Electric Boat designs and builds nuclear submarines for the United States Navy. Engineering design, final assembly and testing of the submarines is performed in the main shipyard at Groton, Connecticut.

In 1994, General Dynamics sought to hire additional engineers. As part of this effort, the company placed an advertisement in the *Washington Post* in July, 1994 for designers and engineers in the following categories: mechanical, marine/nav-arch, electrical, software, civil/structural, and aerospace. Applicants were to apply at the Hyatt Regency, Crystal City, Arlington, Virginia. In response to this advertisement, on July 15, 1994, the plaintiff, Dorenda Canty, who is an African–American, went to the Hyatt Regency to apply for an engineering position. She spoke with a recruiter and gave him her resume and her college transcripts. Her resume indicated that she received a B.S. degree in Nautical Science/Marine Transportation from the United States Merchant Marine Academy in 1979 and a B.S. degree in Civil Engineering from Savannah State College in

1987. Her work experience included work as a Junior Engineer with Sherikon, Inc. (1994), as a Drainage Engineering Technician with the City of Savannah (1988–92), as a Shelter Survey Technician with the Federal Emergency Management Division in Oregon (1986), as an Engineering Aide with the Army Corps of Engineers in Savannah (1985), and as a Technical Hull Surveyor with the American Bureau of Shipping in New York (1979–81). Her college transcripts showed that plaintiff had an overall grade point average of 3.25 from Savannah State but that she had received C's and D's in several structural engineering and naval architectural courses.

Following this initial interview, plaintiff was invited by defendant for a subsequent plant interview at Groton. The letter from General Dynamics, Electric Boat Division, to the plaintiff stated in relevant part:

> The review of your resume has prompted us to invite you to a plant interview at our Groton facility to further explore your interest and discuss the details of your qualifications.

In response to this letter, plaintiff contacted the Groton facility and arranged for an interview to take place on October 11, 1994. She was told that she would be considered for a position in Department 491, which was responsible for engineering for the New Attack Submarine's forward end, and was given a schedule for her interviews. Plaintiff states that, prior to her interview, she was told that the "focuses" of Department 491, System Engineering, included development and design studies, systems, components, mechanical, weapons, hull structure, naval architecture, and fluid mechanics, and that she interviewed for an engineering position "without specificity." Pl.'s Mem. at 4.

On October 11, 1994, as arranged, plaintiff went to Electric Boat's Groton facility for her interview. After filling out an employment application, plaintiff interviewed with Andrew Bliss, a supervisor of the Internal Structure Group within Department 491. He testified in his affidavit that, although he found plaintiff to be a very pleasant, personable person, her background did not fit their requirements. He felt that she had insufficient education and no work experience in structural analysis and that her grades were low in the relevant subject matters. She next interviewed with Brian Pringer, a line level engineer in Department 491. Again, plaintiff made a very good impression in terms of "interpersonal skills," but he, too, noted that she lacked the "design/analysis experience required for this position." Plaintiff's final interview was with Thomas Yankura, an engineering project specialist for Department 470. Plaintiff was not originally scheduled to interview with Yankura, but according to defendant, Human Resources arranged this interview because of her "poor initial interviews." Department 470 was recruiting structural/naval architectural engineers. He determined that she was not qualified for these positions because of her work experience and academic credentials.

After the interviews, Pringer and Bliss met with Department Manager Hesch and completed an Interview Report Form which indicated that the final department decision was not to hire her. It notes "varied background, but not suitable fit to available positions." The Form was signed by the Department Head, James Macaulay, who never met plaintiff and, thus, was not aware of her race.

On December 15, 1994, Electric Boat wrote plaintiff that there was no position available that matched her abilities. The letter stated:

> The results of your recent interview with Dept. 470 and NAS, Dept. 491 have

been reviewed at considerable length. Although your qualifications are substantial, we do not currently have a position that directly matches your abilities.

Plaintiff quickly responded to this rejection letter with her own letter, suggesting that she be considered for a term assignment as a junior engineer for six months "in recognition that the dilemma appears to be how to place/use my demonstrated applicable skills versus my abilities which have not been allowed true demonstrable opportunity." It does not appear that defendant responded to this suggestion.

On February 1, 1995, plaintiff filed a complaint of discrimination with the Department of Labor. She alleged that defendant discriminated against her based on her race and sex. This was referred to the Equal Employment Opportunity Commission, which issued a right-to-sue letter, following which, plaintiff filed the instant complaint in this Court.

### DISCUSSION

Plaintiff has not produced any direct evidence of discrimination against her. She denies that any employee of defendant made any derogatory remarks of a racial nature to her. Rather, she complains of the overall interviewing process and the nature of the questions that she was asked, as well as the interviewers themselves and what she perceived to be their lack of qualifications. She also cites the under-representation of African–Americans in defendant's employ. She complains that she was never told that she would be interviewed for a particular engineering position and was never given a job description. Instead, she understood that she was being interviewed for a broad range of engineering jobs, not a specific structural engineering position. Finally, she challenges defendant's evaluation of her experience. She notes that defendant hired a white,

female engineer the same day plaintiff was refused an offer, which she interprets as a willful and intentional decision to obstruct the entry of a black female into the department.

Defendant has moved for summary judgment on the grounds that there is no claim of gender discrimination in plaintiff's complaint; that plaintiff cannot make out a *prima facie* case of discrimination because she cannot show that she was qualified for the position of structural engineer; and that, even assuming plaintiff carries her *prima facie* burden, she cannot prove that defendant's articulated non-discriminatory reasons for not hiring her were pretextual.

### I. Plaintiff's Sex Discrimination Claim

Defendant first argues that, although plaintiff checked the box on the EEOC form indicating that her charge of discrimination was based upon race and sex, plaintiff has made no allegations of sex discrimination and therefore this claim should be dismissed. We disagree. While the major focus of plaintiff's lengthy complaint is her race discrimination claim, plaintiff has also included claims of gender discrimination. She mentions "gender stereotyping" (Pl.'s Mem. at 23), disparate treatment of plaintiff as compared to white males (Pl.'s Mem. at 21–22), and she points to the under-representation of females in defendant's workforce. Therefore, it appears that plaintiff is, in fact, pursuing both sex and race discrimination claims.

### II. Plaintiff's Prima Facie Case of Discrimination

Defendant asserts that plaintiff cannot demonstrate a *prima facie* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in that she cannot establish that she was qualified for the position of structural engineer in Depart-

ment 491. Defendant asserts that the structural engineering position for which Plaintiff interviewed required a "strong educational background or work experience in structural engineering," and that she possessed neither.

■ The difficulties that we have with defendant's position are two-fold: first, defendant challenges plaintiff's qualifications for a particular, specialized engineering position. Yet, defendant's advertisement, its correspondence to plaintiff inviting her for an interview, and its correspondence rejecting her referenced a wide range of positions. The parties have produced personnel requisition forms indicating that defendant was attempting to hire well over 100 engineers.[1] Thus, we do not view this case as narrowly as defendant. This is not a case of failure to hire for one specific opening. Second, defendant has interpreted the qualification prong of *McDonnell Douglas* as requiring the plaintiff to disprove the employer's proffered legitimate reason for not hiring her as part of her *prima facie* case. This burden is far too stringent.

■ The Second Circuit has repeatedly emphasized the minimal burden that a plaintiff must carry in establishing a *prima facie* case of discrimination. *See, e.g., Byrnie*, 243 F.3d at 101–02; *James v. New York Racing Ass'n*, 233 F.3d 149, 153–54

(2d Cir.2000); *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 199 (2d Cir.1999). All that is required is a showing that (1) plaintiff is a member of a protected group; (2) that she was qualified to perform the duties of the position; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on the Plaintiff's membership in the protected class. *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998); *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

In the recent case of *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87 (2d Cir.2001), *amended by* (June 6, 2001), the Second Circuit addressed the required showing a plaintiff must make with respect to the "qualification prong," stressing that the plaintiff's burden is only "minimal." "Plaintiff must show only that [s]he 'possesses the basic skills necessary for performance of [the] job.'" *Id.* at 91 (quoting *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir.1991)). "The qualification prong must not ... be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in [her] *prima facie* case, the em-

---

1. The personnel requisition forms from Electric Boat show that, in the few months prior to plaintiff's interview at Electric Boat, hiring for more than 100 engineering positions had been approved. Ninety (90) engineering positions were approved in March, 1994, for all R & E Departments for positions of associate engineers through principal engineers. The job requirements attached to the personnel requisition form indicate that for associate engineers, the minimum qualifications were a B.S. degree in an engineering discipline, as well as "little technical experience (zero to nine months)." In June, forty (40) more engineering positions were approved for hiring

for Department 491, including associate engineers, engineers, senior engineers, engineering specialists, and principal engineers. The minimum requirements for these positions were a B.S. degree in engineering and/or five years of related experience in one of the designated "focus" areas. Another personnel requisition form approved on August 9, 1994, for Department 491, shows that an additional 25 positions had been approved for the same type of engineering positions. A B.S. degree is listed as the minimum requirement for the associate engineering and engineering positions.

ployer's proffer of a legitimate, non-discriminatory basis for its decision." *Id.*

■ In this case, many of the engineering positions for which defendant was hiring required only a B.S. degree in engineering, which plaintiff possessed. Additionally, plaintiff went through an initial screening process at her walk-in interview in Crystal City before she was invited to Groton for additional interviews. A jury could reasonably infer that defendant found her minimally qualified for the jobs it was attempting to fill or it would not have invited her for a plant interview.

Accordingly, we find that plaintiff has satisfied her minimal burden of showing that she was qualified for an engineering position, and we reject defendant's argument that it is entitled to summary judgment based on plaintiff's failure to meet her *prima facie* burden.

### III. Proof that Defendant's Stated Reasons Were Pretextual

Defendant next asserts that, assuming *arguendo*, plaintiff can establish a *prima facie* case of discrimination, it has articulated a nondiscriminatory reason for not hiring her, *i.e.*, that she was less qualified. Defendant argues that there is no evidence that plaintiff can point to that even suggests that Electric Boat's proffered reason is false and that discrimination was more likely than not the real reason she was not hired.

■ At the summary judgment stage in an employment discrimination case, the Court is required to examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of the employer. *Byrnie*, 243 F.3d at 102. "A motion for summary judgment may be defeated 'where a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000)). Viewing the facts in the light most favorable to the plaintiff, we find that plaintiff has offered enough evidence to allow a reasonable jury to conclude that defendant's reason for not hiring her for any available engineering position was a pretext for discrimination.

■ As defendant correctly points out, the purpose of Title VII is to prevent unlawful discrimination, not to limit an employer's ability to choose. Moreover, this Court does not sit as a super-personnel agency second-guessing employment decisions of an employer. Additionally, there is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview. *Byrnie*, 243 F.3d at 104. The Second Circuit, however, in discouraging the use of "wholly subjective and unarticulated standards" for judging an applicant's or employee's performance, has instead urged employers to give "clear and specific" explanations for their employment decisions in order to afford the employee a "full and fair opportunity to demonstrate pretext." *Id.* at 104–05.

In reviewing the entire record to determine whether plaintiff has carried her burden of showing pretext, we are again confronted with the problem that this case is not as narrow as defendant suggests. Defendant urges us to look at one engineering position in one department, the position of structural engineer for Department 491, and to hold that plaintiff has offered no evidence to contradict its assessment of her qualifications. Defendant argues:

Here, all who interviewed Canty had the same uniform impression: that she had little or no knowledge or experience related to structural engineering, she was unfamiliar with the essential structural concepts of nuclear submarines, and she was not able to demonstrate to her interviewers that she had the ability, interest, or determination needed to be a successful structural engineer in Department 491.

Def.'s Mem. at 9. Contrary to defendant's position, plaintiff was not rejected solely as a candidate for a structural engineering position with Department 491. She was rejected from all positions at Electric Boat. Yet, there is no evidence that she was even considered for any other position. Nevertheless, defendant writes: "Although your qualifications are *substantial*, we do not currently have a position that directly matches your abilities." Letter of Dec. 15, 1994 from Norris to Canty (emphasis added).

Moreover, the professional interview report form completed after plaintiff's interview belies defendant's negative, after-the-fact assessment of plaintiff's qualifications. On a 1-to-10 scale, with 10 being the highest rating, plaintiff received the following ratings:

Maturity—6

Interpersonal Skills—7

Knowledge of/Interest in EB—4

Potential for Significant Contribution to EB—4

Leadership/Potential for Supervision—3

Desire for Personal/Professional Growth—5

Confidence in Self/Attitude—6

Overall Assessment—5 (Average)

Although these are not stellar ratings, all ratings except one were average or above average and certainly are stronger than defendant's present appraisal of plaintiff would indicate. (We note that all of the successful applicants had interview ratings higher than plaintiff's total score of 40, although four had total ratings between 41 and 49. We also note, however, that twenty of the successful applicants had grade point averages lower than plaintiff's from Savannah State College.)

Further, the form states that plaintiff was found best suited for "project management/administration, engineering task management." Nevertheless, despite the fact that defendant was looking to fill well over 100 engineering positions, there is no evidence that she was considered for any of these positions for which *defendant* considered her "best suited." A final department decision was made not to hire her because of "varied background, but not suitable fit to available positions." However, it is not clear that she was even considered for any position other than structural engineer. Thus, defendant's proffered justification for not hiring plaintiff—that Electric Boat did "not currently have a position that directly matches" the plaintiff's abilities—raises credibility problems. Additionally, the credibility of defendant's current reason for not hiring plaintiff (her lack of qualifications) is undermined by the justification it initially offered—that despite her "substantial qualifications," no position was available that matched her qualifications.

■ We agree with defendant that plaintiff's employment statistics carry little, if any, weight. Plaintiff has not provided any applicant pool data nor has she provided any evidence that Electric Boat's selection process screened out a higher percentage of African–American applicants than any other racial group or a higher percentage of female than male candidates.

We also give little weight to plaintiff's concerns over who interviewed her and

their individual assessment of her interview performance.

 Nevertheless, the Second Circuit has repeatedly admonished the District Courts to give substantial deference to *pro se* litigants and to use extreme caution when granting summary judgment in employment discrimination cases where intent is at issue. Given the credibility concerns raised by defendant's proffered reasons for its hiring decisions, we find that plaintiff has presented sufficient evidence to defeat defendant's summary judgment motion.

### CONCLUSION

Therefore, Defendant's Motion for Summary Judgment [**Doc. # 32**] is DENIED.

SO ORDERED.