14-3611-cv
Chung v. City University of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of March, two thousand fifteen.

PRESENT:  PIERRE N. LEVAL,
     CHESTER J. STRAUB,
     CHRISTOPHER F. DRONEY,
        *Circuit Judges.*

-----------------------------------------------------------------------

LOUIS CHUNG,

       *Plaintiff-Appellant*,

     v.               No. 14-3611-cv

CITY UNIVERSITY OF NEW YORK, BARUCH COLLEGE,

       *Defendants-Appellees*.

-----------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT:    Brian P. Fredericks, Law Office of Brian P. Fredericks, PC, Flushing, NY.

FOR DEFENDANTS-APPELLEES:   David Lawrence III, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Claude S. Platton, Assistant

Solicitor General, *of counsel*) *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY.

Appeal from an August 27, 2014 order of the United States District Court for the Southern District of New York (Daniels, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Plaintiff-Appellant Louis Chung ("Plaintiff") is a Chinese employee of Defendant-Appellee Baruch College ("Baruch"), a constituent college of Defendant-Appellee City University of New York (together with Baruch, "Defendants"). On May 22, 2012, Plaintiff filed suit against Defendants, alleging race and national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On July 9, 2013, after oral argument, the district court entered an order granting Defendants' motion while also granting Plaintiff an opportunity to request leave to file an amended complaint, provided such an amendment would not be futile. Plaintiff filed a proposed amended pleading on September 20, 2013. The court held another hearing on January 15, 2014. By memorandum decision and order entered August 27, 2014, the district court denied the request for leave to amend, finding that the proposed amended pleading failed to cure the deficiencies in the prior complaint and thus was futile. This appeal followed.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's denial of leave to amend on the basis of futility. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011). An amendment is futile if the proposed pleading would not survive a Rule 12(b)(6) motion to dismiss. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). On such a motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To withstand the motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

2

1. Discrimination

Plaintiff argues that the district court erred in determining that his proposed amended complaint fails to allege either an adverse employment action or discriminatory animus. We disagree as to the former and therefore do not reach the latter.

To make out a *prima facie* discrimination claim, a plaintiff "must demonstrate the following: (1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (internal quotation marks and citation omitted). "[A] discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002)), but it must nevertheless comply with the plausibility standard set forth in *Twombly* and *Iqbal*, *id.*

For purposes of a Title VII discrimination claim by a person already employed, an adverse employment action is defined in our Circuit as a "materially adverse change in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citation omitted). Such a change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks and citation omitted). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (alteration in original) (internal quotation marks and citation omitted).

Plaintiff does not dispute that the limitations period on his claim began to run on June 12, 2009. Accordingly, the claim must be based on an adverse employment action that occurred on or after that date. The key allegations, then, involve Plaintiff's receipt of a negative performance evaluation in November 2009 and a series of incidents that allegedly occurred after December 8, 2009. This latter batch of allegations can essentially be summarized as follows: (1) Plaintiff was required to perform certain low-level tasks that fall outside his job description; (2) student workers were assigned tasks for which Plaintiff was better qualified and that did fall within his job description; (3) Plaintiff was denied access to relevant computer programs, updates, and workshops; and (4) Plaintiff was excluded from, and denied notice of, at least two staff meetings and at least five meetings with student assistants.

Even if true, these alleged facts do not constitute an adverse employment action. Significantly, with the exception of the negative performance evaluation and the staff meetings, none of the allegations describes a substantial departure from the state of affairs at the outset of the limitations period. To the contrary, Plaintiff specifically alleges that he had already suffered a substantial reduction in his duties and responsibilities upon a departmental transfer that took place in 2006. The allegations concerning that 2006 transfer describe incidents mirroring those detailed above, including the assignment of low-level tasks and the denial of certain resources and training opportunities.

The key allegation, then, is the November 2009 performance evaluation. However, as Plaintiff concedes, a negative performance review, without more, does not represent an adverse employment action. *See Fairbrother v. Morrison*, 412 F.3d 39, 56-57 (2d Cir. 2005) (surveying cases and finding that a negative evaluation was not materially adverse where the plaintiff did not assert a detrimental effect on her salary, benefits, or title), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). Here, the proposed amended complaint alleges no tangible consequences resulting from the evaluation; indeed, as noted above, the purported diminution in responsibilities and access predated the issuance of the evaluation.

For the reasons already discussed, Plaintiff's argument that the performance evaluation must be viewed in conjunction with the other alleged misconduct fails, as none of the other allegations points to a significant reduction in duties during the limitations period. The allegation regarding exclusion from seven meetings, five of which Plaintiff acknowledges were for student assistants, cannot be said to represent a "significant" diminution in Plaintiff's material job responsibilities.

We therefore conclude that the proposed amended complaint fails to plausibly allege that Plaintiff suffered an adverse employment action during the limitations period. Because a discrimination claim is necessarily implausible absent such an allegation, we need not reach the question of whether any hypothetical injury could plausibly have been attributed to discriminatory animus.

2. Retaliation

Plaintiff also disputes the district court's determination that the proposed amended complaint fails to state a retaliation claim, arguing that he pled sufficient facts to allege both that he suffered an adverse employment action and that the adverse employment action was causally connected to his complaints of discrimination. Because Plaintiff's

proposed amended pleading itself belies any inference of retaliatory intent, we do not address the adequacy of the adverse employment action alleged.[1]

Proof of a retaliation claim at trial requires a showing that "(1) [the employee] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). *Swierkiewicz*—and, by extension, *Port Authority*—applies to Title VII retaliation claims. *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam). Thus, while the complaint need not allege facts supporting each of these elements, it must nevertheless plead sufficient factual content to render the retaliation claim plausible on its face. *See Port Auth.*, 768 F.3d at 254.

The Supreme Court has recently held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Ordinarily, causation may be inferred from close temporal proximity. *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

Here, Plaintiff allegedly filed his "Notice of Claim of Discrimination" on December 8, 2009. Subsequent to that date, he claims he "was assigned demeaning work assignment[s] *further* marginalizing him" from the position he had held prior to his 2006 transfer. App. 11-12 (emphasis added). As discussed, the specific actions alleged to have occurred after the filing of his discrimination complaint include the assignment of low-level tasks and the denial of certain opportunities that were instead afforded to student workers. These allegations are similar to the ones that pre-dated the December 2009 Notice of Claim, and, even where they differ, Plaintiff expressly characterizes them as a furtherance of the earlier discrimination. That Defendants allegedly continued reducing Plaintiff's responsibilities and denying him access to resources and training after he filed a discrimination complaint cannot support an inference that the later-in-time actions were

---

[1] Though the phraseology is the same, the concept of an "adverse employment action" is broader in the retaliation context than in the discrimination context. *See Burlington N.*, 548 U.S. at 67 ("The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. We therefore reject . . . standards . . . that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision . . . ."); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010) (observing that "an action need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim"). Our analysis of the discrimination claim is thus not dispositive of the retaliation claim.

5

motivated by retaliatory intent.   The proposed pleading fails to state a plausible retaliation claim.

Because Plaintiff's proposed amended complaint would not survive a Rule 12(b)(6) motion to dismiss, the district court did not err in denying Plaintiff leave to amend.   *See Dougherty*, 282 F.3d at 87-88.

We have considered Plaintiff's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the district court's order denying leave to amend the complaint.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6