*Kinard v. Crew*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand twenty-one.

PRESENT:
> JOHN M. WALKER, JR.,
> ROBERT D. SACK,
> SUSAN L. CARNEY,
> *Circuit Judges.*

_____

SYLVIA GAIL KINARD,

> *Plaintiff-Appellant,*

> v.                                                  No. 20-2803

DR. RUDOLPH L. CREW, CITY UNIVERSITY
OF NEW YORK, MEDGAR EVERS COLLEGE,

> *Defendants-Appellees.*

_____

FOR APPELLANT:                    RICHARD WASHINGTON, Attorney at Law,
                                  New York, NY.

FOR APPELLEES:                    PHILIP J. LEVITZ, Assistant Solicitor
                                  General (Barbara D. Underwood, Solicitor
                                  General, Steven C. Wu, Deputy Solicitor

General, *on the brief*), *for* Letitia James, Attorney General, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Cogan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on July 27, 2020, is **AFFIRMED**.

Sylvia Kinard served as the chief diversity officer and Title IX coordinator at Medgar Evers College ("MEC") from approximately 2009 until June 2018, when her annual contract was not renewed. In February 2019, Kinard filed this lawsuit against MEC, MEC President Rudolph Crew (her former supervisor), and the City University of New York ("CUNY") (of which MEC is part). Kinard alleges that the decision not to renew her employment contract in 2018 was made in retaliation for a protected activity and therefore violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.[1] The district court granted defendants' motion for summary judgment, concluding that Kinard's activity was protected by Title VII but that the record conclusively established that defendants had decided not to renew her appointment before she engaged in that activity. Kinard appeals from the district court's grant of summary judgment for defendants.

On *de novo* review, we affirm the judgment of the district court, concluding that no reasonable jury could find that Kinard's asserted protected activity—her referral of English Department Chair Brenda Greene's and Provost Augustine Okereke's cross-complaints to the CUNY Central Office—was the but-for cause of defendants' decision not to renew her appointment. We assume the parties' familiarity with the underlying facts, procedural history,

---

[1] Our analysis does not address the NYSHRL claim separately, because we treat employment-discrimination claims brought under the NYSHRL identically to claims under Title VII. *Cooper v. N.Y. State Dep't of Lab.*, 819 F.3d 678, 680 n.3 (2d Cir. 2016) (per curiam).

2

and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

To survive a motion for summary judgment, a plaintiff bringing a Title VII retaliation claim must first show that she engaged in protected activity, that the employer was aware of the protected activity, and that the protected activity was the cause of an adverse employment action—here, Crew's decision not to reappoint Kinard. *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019). To demonstrate causation, the plaintiff must show that retaliation was a but-for cause of an adverse employment action—not merely a "substantial" or "motivating" factor. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348, 360 (2013). An adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before the plaintiff engaged in the protected activity. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

Kinard argues that the district court erred in awarding summary judgment because a genuine issue of fact remains as to whether her April 2018 referral of the Greene-Okereke matter to the CUNY Central Office was the cause of her termination. She submits that, in determining that the decision was made before the April referral, the district court relied "solely" on an early February 2018 email exchange between MEC Human Resources Executive Director Tanya Isaacs and CUNY counsel Katherine Raymond, and that this exchange is "equivocal," demonstrating that no definitive decision as to her renewal or nonrenewal had been made before April. Appellant's Br. at 24.

The email exchange that Kinard cites, which took place under the correspondents' subject line "Sylvia Kinard's Agreement," proceeded as follows:

> **Isaacs (02/06/18)**: We will be moving forward in non-reappointing unless you have more concerns. She is indeed excluded.
>
> **Isaacs (02/09/18)**: Hi Kathy, I just want to make sure you didn't see anything in this agreement which would preclude us from removing Sylvia. Thanks, Tanya
>
> **Raymond (02/09/18)**: Hi, Tanya, there is nothing in that agreement that gives her any right to permanent employment. The only right in there is to be appointed for 2011-2012. She got a one-year

3

appointment letter, so she is clearly on yearly appointments and can be non-reappointed. As an excluded employee, she would not have any union rights.

**Isaacs (02/09/18)**: Thank you and have a great weekend!!! Tanya

**Raymond: (02/09/18)**: You are welcome, you too. Is this really maybe going to happen?

**Isaacs (02/09/18)**: Yes. We will probably move her sooner than later and assign her somewhere else until her appointment runs out if so. I can expect there will be a fight on her end. Oy

J.A. 249–51.

We are not persuaded that Isaacs's statements are so equivocal as to create a jury issue in light of the substantial evidence put forth by defendants that Crew, who was not part of the email exchange, had decided by February 2018, at the latest, that he would not reappoint Kinard. On the contrary, the above email exchange demonstrates the MEC administrators' specific intention not to renew Kinard's contract. Kinard submits that the phrase "if so" in Isaacs's final email reflects uncertainty over whether CUNY would terminate her employment, but that brief phrase—itself ambiguous in context—does not outweigh Isaacs's other, unequivocal statements in the email exchange: for example, she wrote that they "*will* be moving forward in non-reappointing [Kinard]," absent any contractual barriers. J.A. 250 (emphasis added). And when Raymond confirmed to Isaacs that she saw no such legal barriers and asked for confirmation of the intention to "non-reappoint[]" Kinard, Isaacs answered plainly, "Yes." J.A. 249.

Even if Isaacs's February 2018 emails could be characterized as ambiguous, defendants adduced ample evidence that they experienced serious dissatisfaction with Kinard's performance before April 2018, providing sufficient support for the view that her April 2018 action was not the but-for cause of her termination. In a sworn declaration, Crew recounted that he decided as early as October 2013 to change the structure of Kinard's supervision, arranging for her to report to MEC's executive counsel as well as to Crew. He did so, he averred, because he felt that Kinard required more supervision than she received when she reported only to him. Crew stated further that he had increasing concerns with Kinard's performance after October 2013. These grew from her continually late timesheet

4

submissions, her lack of day-to-day accessibility, her deficient meeting attendance, and the poor judgment she exercised in evaluating allegations of sexual harassment made against an athletics coach. Isaacs confirmed Crew's account, averring that Crew "gradually lost faith" in Kinard's job performance. J.A. 433. Similarly, Crew's chief of staff Lakisha Murray explained that Crew "frequently expressed . . . frustration that [Kinard's investigative] reports were not more thorough." *Id.* at 439.

Written memoranda from as early as January 2017 also substantiate Crew's frustration with Kinard's repeated failure to submit her timesheets on time and certain other behavior. *See, e.g.*, J.A. 223 (Crew memo to Kinard dated January 18, 2017, noting that Kinard was "consistently submitting timesheets late," despite previous discussions about untimely submissions, and asking that she submit her timesheets and applications for leave "in a timely manner"); J.A. 240 (Crew memo to Kinard dated February 6, 2018, stating that Kinard's timesheets were a "continuing concern," and she "seemingly do[es] not heed counsel or correct behavior that is dysfunctional for the organization"). In a February 2018 memorandum expressing such concerns, Crew warned Kinard, "If this is not a job you want[,] as I pointed out on February 2, then your behavior will remain the same." J.A. 240. Kinard dismisses this evidence as "pretextual," Appellant's Br. at 26, but that characterization is unconvincing considering that this evidence, which largely corroborates defendants' declarations, reflected serious, long-running concerns by her employer that first arose and were expressed well before she engaged in the asserted protected activity.

Attempting to counter the implications of this evidence, Kinard emphasizes the fact that the Isaacs-Raymond email exchange took place two and one-half months before she was notified of the nonrenewal of her appointment, suggesting that defendants' contemplation of terminating her in February 2018 was unconnected to her ultimate termination. But the timing of the notification of nonrenewal does not in any way undermine the evidence that defendants decided to terminate her employment long before she engaged in the asserted protected activity. The Supreme Court has explained that an employer's decision to "proceed[] along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality," even if final implementation

5

of the previously contemplated adverse employment action takes place after the alleged protected activity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). Moreover, the email exchange is entirely consistent with defendants' narrative of long-brewing dissatisfaction. Isaacs suggests in her February 2018 email exchange with Raymond that defendants intended to allow Kinard to continue working only "until her appointment r[an] out." J.A. 249. In sworn declarations, Crew, Issacs, and Murray all state that Crew decided as early as January 2018 not to renew Kinard's employment at the end of the term. Crew and Isaacs both attested further that MEC customarily delays informing employees of contract nonrenewal until shortly before CUNY's May 1 notice deadline, to minimize the time spent dealing with disappointed and potentially unmotivated employees. Thus, the time that lapsed between Crew's decision not to reappoint Kinard and Kinard's notification of the decision does not weigh in Kinard's favor or create a genuine issue of material fact.

In light of the overwhelming evidence showing that defendants decided not to renew Kinard's term of employment "well before the plaintiff had ever engaged in [the] protected activity," *Slattery*, 248 F.3d at 95, we agree with the district court that no reasonable jury could find that Kinard's April 2018 referral of the Greene-Okereke matter was the but-for cause of defendants' failure to renew her appointment.

* * *

We have considered Kinard's remaining arguments and find in them no basis for reversal. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
