Leonard A. **VERNON**, Plaintiff,

v.

**THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,** Defendant.

**No. 95 Civ. 4594(PKL).**

United States District Court, S.D. New York.

Aug. 7, 2001.

Thomas F. Bello, P.C., Staten Island, NY, for Plaintiff.

Milton H. Pachter, The Port Authority of New York and New Jersey, New York City, for Defendant.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff, Leonard A. Vernon, brings this action alleging unlawful employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* (2001) ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a), (d) (2001) ("ADEA"). Defendant, The Port Authority of New York and New Jersey, moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant's motion is granted in part and denied in part.

## BACKGROUND

Leonard A. Vernon ("Vernon"), a citizen of the United States, is a black male over 40 years old who was born in Belize. *See* Plaintiff's Rule 56.1 Statement [hereinafter "Pl.'s 56.1 S."] at 1. He received a B.A. in Civil Engineering in 1977 and a M.S. in Environmental Engineering in 1980. *See id.* In January 1984, The Port Authority of New York and New Jersey ("Port Authority") hired Vernon to be a Principal Administrative Assistant, a Level B–92 position, with the Civil and Environmental Unit of the Engineering Department. *See* Plaintiff's Complaint [hereinafter "Pl.'s Compl."] at 2. In January 1985, Vernon was promoted to Staff Services Engineer, a Level B–93 position. *See* Pl.'s 56.1 S. at 1. Throughout his career at Port Authority, Vernon has been recognized favorably for his work. For example, he received an individual bonus in 1985 for high quality performance, was nominated for the 1986 Black Achievers in Industry Program, honored by the Director of the World Trade Department in 1990 for contributing to the Department's capital projects objective, and has consistently received high ratings in his performance evaluations for

the last ten years. *See* Pl.'s Compl. at 3, Deposition of Frederick A. Meyers, sworn to on July 5, 2000 [hereinafter "Meyers July Dep."] at 30.

In September 1989, Heidi Rosenberg, a white engineer in the Environmental Engineering Unit, was promoted to Senior Engineer, a Level B–94 position.[1] *See* Defendant's Rule 56.1 Statement [hereinafter "Def.'s 56.1 S."] at ¶ 4. Vernon was not promoted despite the fact that Marvin Krishner, Chief Environmental Engineer of the unit and Vernon's immediate supervisor, wrote in a 1987 memorandum that Rosenberg and Vernon were both "performing at 'Senior Levels'." *See* Defendant's Answer [hereinafter "Def.'s Answer"] at ¶ 10. In December 1992, Rosenberg informed her supervisor that she had received an employment offer in another department, and to induce her to stay in the Environmental Engineering Unit, she was promoted to Supervising Environmental Engineer, a Level B–95 position. *See* Def.'s 56.1 S. at ¶ 5, Deposition of Frederick A. Meyers, sworn to on Oct. 13, 2000 (hereinafter "Meyers Oct. Dep.") at 14–15.

In March 1993, Rosenberg resigned from Port Authority, and Port Authority advertised her position internally as well as externally. *See* Pl.'s 56.1 S. at 2. Vernon applied for the B–95 position but was notified in May that he had not been selected for the position. A white, 65–year old temporary employee, who had been working for Port Authority for one year, filled the vacancy. *See* Def.'s 56.1 S. at ¶ 7. In March and August of 1994, Vernon complained to the Assistant Chief Engineer for Design and the Executive Director of Port Authority about alleged ongoing discriminatory practices at Port Authority. *See id.* at 3. In September 1994, Frederick Meyers, Manager of Port Authority's Equal Employment Office ("EEO"), started an investigation into Vernon's allegations of discrimination. *See id.*

In January 1995, four months after the start of Meyers's investigation, Vernon received his annual Performance Planning and Review ("PPR"), and discovered that although he had received the same overall rating as previous years and the maximum merit increase to which he was entitled, the individual scores in one category were downgraded. *See* Oscar Suros Affidavit, sworn to on Sept. 12, 2000 [hereinafter "Suros Aff."] at ¶ 12. According to Oscar Suros, the Manager of the Engineering/Architecture Design Division, Vernon's rating was downgraded because supervisors were asked to be more realistic about PPR ratings, and this policy was applied to all employees. *See id.* at ¶¶ 11, 13.

In February 1995, Port Authority issued a job bulletin seeking candidates for a Principal Environmental Engineer position, a Level B–95 position. *See* Def. 56.1 S. at ¶ 10. Vernon applied for the position but was told that he could not be considered for the position because he did not meet the job requirement of holding an engineer's license. *See id.* at ¶ 6. Because of a hiring and promotion freeze in 1995, the position was not filled. *See id.* at ¶ 7.

On March 23, 1995, Vernon filed a charge with the Equal Employment Opportunity Commission ("EEOC"), claiming race, age, and ethnic origin discrimination and retaliation. *See* Pl.'s Compl. at 5. A Notice of Right to Sue was issued in April 1995. *See id.* On June 20, 1995, Vernon commenced the instant action by filing a Complaint in this Court, alleging that Port Authority violated Title VII and the ADEA when it: (1) failed to promote him

---

**1.** It is unclear whether or not Vernon applied for the job.

to a B–94 position in September 1989; (2) failed to promote him to a B–95 position in October 1992; (3) failed to promote him to Rosenberg's former position in May 1993; (4) downgraded his PPR in January 1995; and (5) denied him the Principal Environmental Engineer position, another B–95 position, in March 1995. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [hereinafter "Pl.'s Mem."] at 3–4.

## DISCUSSION

### I. *Standard for Summary Judgment*

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental Inc.*, 95 F.3d 123, 128 (2d Cir.1996). When considering a motion for summary judgment, the Court's responsibility is not "to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Holt*, 95 F.3d at 129.

The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gallo v. Prudential Residential Serv. L.P.*, 22 F.3d 1219, 1223–24 (2d Cir.1994). "[T]he movant's burden will be satisfied· if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). Once the moving party discharges his burden of demonstrating that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Continental Group*, 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505).

Employment discrimination is often perpetrated "by discreet manipulations and hidden under a veil of self-declared innocence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991). Because "[a]n employer who discriminates is unlikely to leave a 'smoking gun' ... attesting to a discriminatory intent," a "victim of discrimination ... is usually constrained to rely on the cumulative weight of circumstantial evidence." *Id.* (internal citations omitted). Consequently, courts must be cautious in granting summary judgment when the employer's intent and state of mind are placed in issue. *See Gallo*, 22 F.3d at 1224; *see also Rosen*, 928 F.2d at 533. However, if there is a lack of genuine issue of material fact, courts are not precluded from granting summary judgment in employment discrimination cases. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir.1994);

*see also Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## II.  Acts Prior to September 25, 1994

### A.  180–day Time Limit Applies

For complaints based on Title VII or the ADEA, a plaintiff must file a charge of discrimination with the EEOC before commencing an action in federal court. *See* 42 U.S.C. § 2000e–5(e), 29 U.S.C. § 626(d). The charge must be filed within 180 days after the alleged unlawful employment practice occurred or within 300 days if the plaintiff has initiated proceedings with a state or local employment agency. *See* 42 U.S.C. § 2000e–5(e); 29 U.S.C. § 626(d); *Dezaio v. Port Auth. of N.Y. & N.J.,* 205 F.3d 62, 64–65 (2d Cir.2000), *cert. denied* 531 U.S. 818, 121 S.Ct. 56, 148 L.Ed.2d 24 (2000) (ADEA); *Gomes v. Avco Corp.,* 964 F.2d 1330, 1332–33 (2d Cir.1992) (Title VII).

■ Port Authority, a bi-state entity created by a Compact between New York and New Jersey, "lies outside New York's [and New Jersey's] anti-discrimination regime[s]." *Dezaio,* 205 F.3d at 64, 65. Bi-state entities "are not subject to the unilateral control of any one of the States." *Id.* at 66 (quoting *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 42, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)). Thus, "New York's anti-discrimination laws are not controlling with respect to the time limitations that govern when an individual must file a charge of discrimination with the EEOC." *Id.* at 65. Because there is no state or local agency that has jurisdiction over claims against Port Authority, the 300–day rule does not apply to cases in which Port Authority is a party. *See id.* at 66. Therefore, in Title VII or ADEA cases involving Port Authority, a plaintiff must file a claim with the EEOC within 180 days of the occurrence of the discriminatory act. *See id.* at 64; *see also Suggs v. Port Auth. of N.Y. & N.J.,* 1999 WL 269905, *3 (S.D.N.Y.1999); *Rose v. Port Auth. of N.Y. & N.J.,* 13 F.Supp.2d 516, 520 (S.D.N.Y.1998) (Leisure, J.); *Settecase v. Port Auth. of N.Y. & N.J.,* 13 F.Supp.2d 530, 535 (S.D.N.Y.1998); *Baron v. Port Auth. of N.Y. & N.J.,* 968 F.Supp. 924, 930 (S.D.N.Y.1997).

Vernon filed with the EEOC on March 25, 1995. Applying the 180–day rule, only incidents occurring within 180 days prior to his filing are actionable. Therefore, any events occurring before September 25, 1994 are time-barred.

### B.  Continuing–Violation Exception Does Not Apply

There is an exception to the time limitation to file a claim with the EEOC in cases where there is a continuing violation of Title VII or the ADEA. "The continuing-violation exception extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir. 1998) (internal quotes omitted). A continuing violation may be found where there is evidence of an ongoing discriminatory policy or a discriminatory mechanism such as a discriminatory seniority list or an employment test. *See Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *see also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996). Even where there is no formal policy, a continuing violation may also be found where there is proof that "the employer has permitted [specific and related instances of discrimination] to con-

tinue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001). Furthermore, the policy does not need to be widespread; the continuing violation exception may apply to specific and related instances of discrimination against a single plaintiff. *See id.* However, several incidents of discrimination, even if similar, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation. *See Lambert*, 10 F.3d at 53, *Van Zant*, 80 F.3d at 713.

■ Vernon argues that the continuing-violation exception applies and that all the events that occurred before September 25, 1994 are timely, because Krishner created a pattern of discrimination. *See* Pl.'s Mem. at 9. This argument is unpersuasive to the Court. The discontinuity in time of the three acts of alleged discrimination occurring before September 25, 1994 is fatal to his argument. *See Quinn*, 159 F.3d at 766. In *Quinn*, the Court held that acts occurring in breaks of 3 years, 1 year, and less than a year were sufficiently isolated in time to break the continuum of discrimination. *See id.* Here, the first incident occurred in 1989, the second in October of 1992, and the third in May of 1993. Similar to *Quinn*, the 3–year and 7–month time gaps between these incidents do not reflect a "continuing" violation.

Even if there was continuity in time of the allegedly discriminatory acts, Vernon has not provided any evidence of a discriminatory policy or mechanism used against him. He appears to be arguing that Krishner instituted a discriminatory policy against him in failing to · promote him several times over the years, but he does not show that it was the result of a discriminatory policy that Krishner insti-

tuted against him. Although Vernon claims to have discussed his desire to be promoted with Krishner, he does not indicate when these conversations took place. Therefore, Vernon offers no evidence to show that Krishner knew of Vernon's desire to be a Senior or a Supervising Engineer in 1989 and 1992 when Rosenberg was promoted. Furthermore, Vernon offers no evidence that Krishner had the authority to carry out such a policy against Vernon or that Krishner was involved in the hiring decisions in 1989 and 1992. Although the incidents of failure to promote are similar in nature, because they are not the result of a discriminatory policy or mechanism, they do not constitute a continuing violation.

■ In addition, Vernon cannot show that these incidents continued unremedied for so long as to amount to a discriminatory policy or practice. Vernon complained about the alleged discriminatory practices first in March 1994 and then in August 1994, and Port Authority started an investigation of these allegations in September of the same year. Because Port Authority took prompt action in response to Vernon's complaints, there is no evidence that discriminatory acts continued unremedied for so long to amount to a continuing violation. *See Fitzgerald*, 251 F.3d at 362. Because there is no evidence of a continuing violation, the 180–day rule cannot be extended to cover incidents occurring prior to September 25, 1994.

## C. *Equitable Tolling Does Not Apply*

■■ Courts have held that time limitations for filing periods under Title VII or the ADEA are subject to equitable tolling. *See South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11 (2d Cir.1994) (applying equitable tolling to time limitation for filing civil action under Title VII); *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48

(2d Cir.1985) (applying equitable tolling to time limitation for filing EEOC charges under ADEA). Time periods governing filings may be tolled if "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *South*, 28 F.3d at 11 (quoting *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). In other words, the time limitation will be tolled if a plaintiff was "prevented in some extraordinary way from exercising his rights." *Cerbone*, 768 F.2d at 49 (internal quotes omitted). Such extraordinary circumstances exist when "it would have been impossible for a reasonably prudent person to learn that an employment decision was discriminatory," the Court led the plaintiff to believe that he had taken all the required steps, the defendant's affirmative misconduct lulled the plaintiff into inaction, the claimant did not have adequate notice, or there is a pending motion for the appointment of counsel. *Id.* (internal quotes omitted); *see also South*, 28 F.3d at 11–12.

Here, Vernon has not shown that any extraordinary circumstances exist in his case to justify equitable tolling. Neither the Court nor the defendant lulled the plaintiff into inaction. Vernon argues that Port Authority's internal investigation caused time to lapse and led him to delay filing with the EEOC. *See* Pl.'s Mem. at 6. There is no evidence, however, that Port Authority used the internal investigation to hinder Vernon from filing. The fact that Vernon filed with the EEOC before Meyers issued a final report of the investigation reflects Vernon's awareness that he was free at any time during the investigation to file with the EEOC. Furthermore, Vernon had already missed the 180-day deadline through his own inaction before

Port Authority's EEO became involved. The 180-day period begins to accrue "from the date the claimant had notice of the allegedly discriminatory action." *Van Zant*, 80 F.3d at 713. Each time Vernon was denied a promotion, he had notice of the events and could have filed a charge with the EEOC. When he first complained in March 1994, the 180-day deadline for the most recent incident, which occurred in May 1993, had already expired.

Vernon also insists that Port Authority's failure to advise him of his rights, including notice of the 180-day rule and right to counsel, prevented him from timely filing with the EEOC. Vernon does not cite, and research by the Court has failed to reveal, any case law holding that the employer must inform the employee of his rights when he files an internal discrimination complaint. To the contrary, the Second Circuit has held that ignorance of the 180-day rule for Port Authority employees, because the employer or a lawyer failed to advise the employee, is no excuse for missing the filing deadline. *See Dezaio*, 205 F.3d at 64. Because Vernon is unable to show that he was induced or tricked into missing the limitation period, equitable tolling to admit acts occurring prior to September 25, 1994 as timely is not appropriate in this instance.

## D. *180–day Rule Does Not Violate the Equal Protection Clause*

■ Vernon argues that the 180-day rule violates the Equal Protection Clause, because non-Port Authority employees can take advantage of the 300-day time requirement. "When a statute neither impinges on a fundamental right guaranteed by the Constitution nor uses a classification based on a suspect criterion such as race, nationality, alienage, or gender, the law generally will not be found to violate the Equal Protection Clause unless it has

no reasonable or rational basis." *Story v. Green,* 978 F.2d 60, 63–64 (2d Cir.1992) (citing *Exxon Corp. v. Eagerton,* 462 U.S. 176, 196, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983); *Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981)). Vernon does not argue that the time limitations in Title VII or the ADEA impinge on any fundamental right, but argues instead that the time limitations violate the Equal Protection Clause because they treat Port Authority employees differently than other victims of discrimination. Because Port Authority employees are not a suspect class, the statutes must be examined under the rational basis standard.

Under the rational basis standard, a statute will be upheld if there is a "rational relationship between the [challenged classification] and some legitimate governmental purpose." *Tarbe v. Berkel,* 196 F.3d 136, 137 (2d Cir.1999) (quoting *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). "[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Tarbe,* 196 F.3d at 137 (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

The difference in time limitations for filing with the EEOC promotes a legitimate government purpose. Normally, Title VII and the ADEA require that a charge be filed 180 days after the alleged unlawful act occurred. The 300–day rule is applicable only where the "alleged unlawful practice occurred in 'a State which has a law prohibiting discrimination in employment ... and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice.'" *Dezaio,* 205 F.3d at 65. The purpose of the extension of time is for "exhaust[ing] administrative remedies with an eye toward conciliation and resolution of the alleged [discriminatory] practice ... without the need to resort to litigation." *Id.* Not allowing Port Authority employees to benefit from the extension of time from 180 days to 300 days is rationally related to this purpose, because neither New York's no New Jersey's anti-discrimination laws apply to Port Authority, therefore making reconciliation with the state unattainable. Therefore, the 180–day rule does not violate Vernon's right to Equal Protection.

Given Vernon's failure to produce evidence that establishes a continuing violation, a reason for equitable tolling, or a violation of the Equal Protection Clause, the Court grants the defendant's motion for summary judgment for all claims occurring prior to September 25, 1994 and excludes them from its consideration on the merits. The Court will consider the remaining two acts of alleged discrimination and retaliation that occurred subsequent to September 25, 1994:(1) the downgrade in Vernon's PPR and (2) the failure to promote to the Principal Environmental Engineer position.

### III. *Title VII and ADEA Claims*

#### A. *McDonnell Douglas Standard*

Title VII provides that it shall be unlawful for an employer "to discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA provides that it shall be unlawful for any employer to "discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a). Title VII and ADEA claims are examined under the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Scaria v. Rubin,* 117 F.3d 652, 653 (2d Cir.1997) (analyzing both Title VII and ADEA claims under the McDonnell Douglas

framework). First, a plaintiff must establish a prima facie case of unlawful discrimination. *See id.; see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994) (citing *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817).

In order to establish a prima facie case of discrimination, the plaintiff must show: (1) membership in a protected class, (2) qualification for the position, (3) an adverse employment action, and (4) circumstances giving rise to an inference of discrimination. *See O'Connor v. Consol. Caterers Corp.*, 517 U.S. 308, 310, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000); *Scaria*, 117 F.3d at 652; *Chambers*, 43 F.3d at 37; *de la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Serv.*, 82 F.3d 16, 20 (2d Cir.1996). The burden of establishing a prima facie case is minimal. *See Scaria*, 117 F.3d at 654; *Chambers*, 43 F.3d at 37.

Once the plaintiff has made out a prima facie case, there is a presumption that the employer unlawfully discriminated against the employee. *See Scaria*, 117 F.3d at 654. To rebut the presumption, the employer is required to introduce, through admissible evidence, a legitimate, nondiscriminatory reason for its action. *See id.; see also Chambers*, 43 F.3d at 38. "Any stated reason is sufficient; the employer need not persuade the court that the proffered reason was the actual reason for its decision." *Tarshis v. Riese Org.*, 211 F.3d 30, 36 (2d Cir.2000).

Finally, after the employer justifies its action, the burden of production shifts back to the plaintiff to show that the employer's reason was merely a pretext for discrimination. *See Abdu–Brisson*, 239 F.3d at 469; *see also Chambers*, 43 F.3d at 38. Pre-text can be shown by either presenting additional evidence showing that the employer's justification is "unworthy of credence" or relying solely on the "evidence comprising the prima facie case." *See Chambers*, 43 F.3d at 38 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). There is no categorical rule that the plaintiff must offer, in addition to his prima facie case and evidence of pretext, further evidence that discrimination was the actual motivation. *See Abdu–Brisson*, 239 F.3d at 469 (interpreting *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097).

### 1. *PPR Downgrade*

Vernon is able to make out a prima facie case of discrimination under Title VII and the ADEA for the downgrade in his PPR. It is undisputed that Vernon belongs to a protected class (he is 40 years of age or older and a black Belizean) and that he was qualified for the position he held.

■■■■ Port Authority argues that the PPR downgrade is not an "adverse" employment action, because although some individual scores were reduced, Vernon still received the same overall score as previous years and received the maximum pay increase to which he was entitled. Title VII and the ADEA prohibit employers from discriminating with respect to "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1), 29 U.S.C. § 623(a)(1). "[A] materially adverse change in the terms and conditions of employment" is considered an adverse employment action. *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir.1997) (internal quotes omitted); *see also, de la Cruz v. N.Y. City*

*Human Res. Admin. Dep't of Soc. Serv.,* 82 F.3d 16, 21 (2d Cir.1996). An action "injurious to current employment or the ability to secure future employment" is an adverse employment action. *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997).

The Second Circuit has held that a downgrade in evaluation is an adverse employment action. *See Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999) (holding in the context of a First Amendment retaliation claim that adverse employment actions may include negative evaluation letters); *Dominic v. Consol. Edison Co. of N.Y., Inc.,* 822 F.2d 1249, 1254 (2d Cir. 1987) (holding that adverse employment actions include poor evaluations); *Preda v. Nissho Iwai Am. Corp.,* 128 F.3d 789, 790 (2d Cir.1997) (holding that downgrade of evaluation, among other factors, raised a genuine issue of material fact with respect to adverse employment action). Because the PPR downgrade may lead to Vernon's inability to secure future employment, he suffered an adverse employment action, thus fulfilling the third prong of the prima facie case.

■ Vernon can satisfy the final prong of the prima facie case, that the downgrade occurred under circumstances giving rise to an inference of discrimination. Vernon's PPR scores over the last ten years have been consistently above average. In his investigation, Meyers concluded that there were some "management inconsistencies" in the way the downgrade in Vernon's PPR was handled. Meyers July Dep. at 30. Ordinarily, Port Authority employees have access to counseling and feedback on their performance. However, Vernon's supervisors summarily dismissed Vernon's request to review his lowered PPR scores, stating that "it would take too much time." Mins. of PPR Mtg. ¶ 11. When Meyers questioned Vernon's supervisors about the reasons for the lower scores, he heard for the first time about performance deficiencies and difficulties that were not recorded in Vernon's PPR. *See* Meyers July Dep. at 30. During the course of his investigation, Meyers met with Krishner to discuss Vernon's PPR, and Meyers stated that Krishner became "defensive" about his failure to chronicle these job deficiencies in the PPR he wrote for Vernon and orally reporting these shortcomings for the first time. *See* Meyers Oct. Dep. at 27.

Furthermore, Meyers reported that Krishner had previously stated that he preferred to promote younger staff members. *See* Plaintiff's Exhibit 20 [hereinafter "Pl.'s Ex. 20"] at ¶ 5. This quote would be admissible to show Port Authority's discriminatory animus toward Vernon. Although only age is expressly mentioned, in light of the "debatable circumstances" surrounding the PPR downgrade, a factfinder may also be free to infer discrimination based on race or national origin. *Chambers,* 43 F.3d at 38 (inferring discrimination where no evidence that dismissal based on protected classification but where evidence that reason for discharge was contrived). Because the plaintiff's burden of making a prima facie case is *de minimis,* Vernon has submitted enough evidence to give rise to an inference of discriminatory intent based on age, race, or national origin.

■ Port Authority satisfies its burden of articulating a legitimate, nondiscriminatory reason for the PPR downgrade. Port Authority claims that the reduction in Vernon's PPR scores was the result of a uniformly applied policy to give more "realistic" ratings to all staff members. Suros Aff. at ¶ 11. In fact, a number of engineers besides Vernon received lower PPR scores. *See id.* at ¶ 13.

There is evidence, however, that this reason could be construed as a pretext for discrimination. While reducing Vernon's PPR scores, Port Authority still awarded him his merit increase. *See Chambers*, 43 F.3d at 39 (inferring discrimination when employer did not discharge employee until he was given a raise). The fact finder may also infer that by refusing to give Vernon concrete reasons for the downgrade and then later reporting performance difficulties, Port Authority's reason was pretextual. *See id.* (inferring discrimination when employer discharged employee without giving him any concrete reason and then providing conclusory statement that job performance was poor). These circumstances, in addition to the circumstances discussed above that gave rise to an inference of discrimination in the prima facie case, could lead a rational jury to find that Port Authority's reason was pretextual. The Court does not underestimate the plaintiff's burden in proving intentional discrimination at trial, but drawing all inferences in favor of the non-moving party, the Court believes that the jury should resolve the inconsistencies in this situation. *See id.* at 40 (leaving resolution of "debatable circumstances" to the trier of fact). Therefore, defendant's motion for summary judgment on plaintiff's Title VII and ADEA claims regarding the PPR downgrade is denied.

### 2. *Failure to Promote*

Vernon is able to make out a prima facie case of discrimination under Title VII and the ADEA for the denial of his promotion to Principal Environmental Engineer. In order to establish a prima facie case for discriminatory failure to promote, a plaintiff must demonstrate: (1) membership in a protected class, (2) application for promotion to a position for which he was qualified, (3) rejection for the promotion, and (4) circumstances giving rise to an inference of discrimination. *See Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 386 (2d Cir.2000); *O'Connor*, 517 U.S. at 312, 116 S.Ct. 1307. It is undisputed that Vernon is a member of a protected class and was rejected for the position.

■ Port Authority argues that Vernon was not qualified for the Principal Environmental Engineer position because he did not possess a professional engineer's license, one of the purported job requirements. Vernon has put forth evidence that the licensing requirement is a pretext for discrimination. Following the teaching of *Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir.1999), the Court will consider the job requirement in the second step of the McDonnell Douglas test where the defendant proffers a legitimate reason for the employment action. Under the qualification prong of the prima facie case, the Court will only examine whether or not Vernon had the basic skills for the position.

To show qualification, the plaintiff does not need to show perfect performance or even average performance, but only needs to show that he "possesses the basic skills necessary for performance of the job." *See Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir.2001) (internal quotations omitted). An employee should not be required to "disprove an employer's explanation that inadequate ability ... justified the job action at issue." *Id.* at 696–97. Vernon is able to show that he has the basic skills necessary for the job. His PPR for the last ten years show that his performance has been above average. He has worked in the Port Authority's Environmental Unit since 1984, and Vernon claims that his experience as the Asbestos Project Manager gives him the basic skills necessary to perform as a Principal Environ-

mental Engineer managing all asbestos and lead abatement design services. *See* Plaintiff's Statement of Qualification at 3, Defendant's Job Opportunity Bulletin [hereinafter "Def.'s Bullt."]. Additionally, Vernon has won awards and recognition for projects he completed. Because Vernon has made the "minimal showing" that he has the fundamental skills to perform the Principal Environmental Engineer position, he satisfies the second prong of the prima facie case.

Vernon also satisfies the fourth prong of the prima facie case, that the denial of the promotion occurred under circumstances giving rise to an inference of discrimination. In his investigation of Vernon's complaint, Meyers, who investigated Vernon's complaint, drafted a report of his findings and conclusions. In the final draft of the report, he reported circumstances which give rise to an inference of discrimination. For example, Meyers noted that Vernon has been relegated to asbestos responsibilities when promotional opportunities tend to occur in the environmental design branch. *See* Pl.'s Ex. 20 at ¶ 3. Meyers stated that "if there is a valid reason for not seriously considering Mr. Vernon's qualification for an executive level position ..., I was unable to uncover it." *See id.* at ¶ 8. Meyers also noted that staff with less tenure and fewer related credentials than Vernon has been promoted to more senior positions at a faster rate. *See id.* at ¶ 9. He pointed out that Rosenberg, who started working for Port Authority later than Vernon and had less credentials, was promoted more quickly than Vernon. *See* Meyers Oct. Dep. at 47. Most importantly, Meyers wrote that Krishner claimed · that "he preferred to promote younger

staff." *See* Pl.'s Ex. 20 at ¶ 5; *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996) (holding that remarks made by decision-makers could be viewed as reflecting discriminatory animus). The fact that the position was not filled by someone outside the protected class because of a hiring freeze does not eliminate the inference of discrimination. *See Meiri v. Dacon*, 759 F.2d 989, 996 (2d Cir.1985); *see also O'Connor*, 517 U.S. at 312–13, 116 S.Ct. 1307; *Chertkova*, 92 F.3d at 91. A combination of all these circumstances satisfies Vernon's initial burden of establishing a prima facie case of discrimination based upon age, race, and national origin.[2]

 ▮▮ Port Authority is able to provide legitimate, nondiscriminatory reasons for denying Vernon the promotion. Because both New York and New Jersey law require that state institutions employ only licensed professional engineers to perform engineering work or be in responsible charge, Suros recommended that employees in positions B–95 and above have a professional engineer's license. *See* Suros Memorandum [hereinafter "Suros Mem."]. A Principal Environmental Engineer is a B–95 position, so the position was advertised with a professional engineer's license requirement. *See* Def.'s Bullt. Port Authority argues that because Vernon does not hold a license, he does not meet the minimal requirement for the job. Furthermore, Port Authority maintains that problems with Vernon's job performance also justified the denial of the promotion. According to Krishner, Vernon could not maintain schedules, manage consultant and client relationships, or pay attention to detail, and was a poor technical writer. *See* Meyers Oct. Dep. at 25. In light of

---

**2.** As the Court noted above, even though Krishner's comment related only to age, the fact-finder is also free to infer Port Authority's discriminatory animus based on race or national origin, especially in light of the "debatable circumstances" surrounding the failure to promote. *See Chambers*, 43 F.3d at 40.

these declarations, Port Authority has satisfied its burden of articulating nondiscriminatory reasons for failing to promote Vernon.

The evidence from Vernon's prima facie case, as well as further evidence he has provided, suggest that Port Authority's reasons may be pretextual. A short three months after Meyers started an investigation of Vernon's complaint, Suros recommended a policy which precluded Vernon from being promoted. Port Authority did not attempt to structure a developmental plan to include how Vernon could obtain a license. *See* Meyers Oct. Dep. at 47–48. Vernon also points out that Suros merely "recommended," not required, that positions B–95 and above have a license. *See* Suros Mem. Vernon was able to name two individuals, Kirby King and Rich Rasinski, who were working at higher levels than Vernon without holding licenses.[3] *See* Meyers Oct. Dep. at 30–31. Furthermore, the job deficiencies that Krishner described as obstacles to Vernon's successful promotion were never articulated in Vernon's performance appraisals. *See* Meyers Oct. Dep. 27. This additional evidence, together with the evidence from Vernon's prima facie case, conflicts with Port Authority's proof of nondiscriminatory reasons. Because a genuine issue of material fact exists, the Court denies defendant's motion for summary judgment on plaintiff's Title VII and ADEA claims regarding the failure to promote.

## B. *Retaliation Claims*

Title VII and the ADEA both provide that it shall be unlawful for an employer to discriminate against any employee because he has opposed an unlawful employment practice. *See* 42 U.S.C. § 2000e–3(a), 29 U.S.C. § 623(d). "A finding of unlawful retaliation is not dependent on the merits of the underlying discrimination complaint." *Davis v. State Univ. of N.Y.,* 802 F.2d 638, 642 (2d Cir.1986). Retaliation claims are also analyzed under the McDonnell Douglas three-step burden-shifting framework. *See Wanamaker,* 108 F.3d at 465 (analyzing Title VII and ADEA retaliation claims under McDonnell Douglas standard). First, the plaintiff must establish a prima facie case of retaliation. To make out a prima facie case, the plaintiff must show that: (1) he was engaged in a protected activity under Title VII and the ADEA, (2) the employer was aware of the plaintiff's participation in the protected activity, (3) he was subjected to an adverse employment action, and (4) there is a casual connection between the protected activity and the adverse action. *See id.; see also Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 113 (2d Cir.2000) (Title VII); *Slattery v. Swiss Reins. Am. Corp.,* 248 F.3d 87, 94 (2d Cir.2001) (ADEA). The burden at this stage is de minims. *See Wanamaker,* 108 F.3d at 465. Once the plaintiff has established a prima facie case, the defendant must offer a legitimate, nondiscriminatory reason for the adverse employment action. *See Slattery,* 248 F.3d at 94–95. If the defendant satisfies his burden, then the plaintiff must show that the reason is a pretext for discrimination. *See id.* at 95.

### 1. *PPR Downgrade*

Vernon is able to establish a prima facie case for his retaliation claim regarding the PPR downgrade. First, Vernon engaged in a protected activity when he filed a discrimination complaint with the EEO. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000) ("The term 'protected activity' refers to action taken to pro-

---

**3.** Although Vernon does not offer evidence of what level positions these two employees held, as Vernon was a B–93, these employees may have been at the B–95 or above level.

test or oppose statutorily prohibited discrimination."). Vernon is required "to show not an actual violation of the act, but only that he was under a 'good faith, reasonable belief' that such a violation existed." *Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir.1989).

Second, Port Authority was aware of his participation in the activity, because Vernon filed with the Port Authority's EEO. Third, as discussed above, the downgrade in Vernon's PPR is considered an adverse employment action. Finally, there is a causal connection between the protected activity and the adverse action. "Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment." *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.1987) (italics in original). The downgrade in Vernon's PPR occurred four months after the start of Port Authority's investigation into Vernon's complaint. The short time period in which these two events happened reflects a causal nexus between them. *See id.* (noting that one year between employee filing complaint and his discharge suggests causation).

■ Port Authority proffers a legitimate, non-discriminatory reason for the downgrade: that all supervisors were instructed to give more realistic ratings to all employees. However, Vernon has put forth evidence that the reason is a pretext for retaliation. In his investigation, Meyers concluded that there were some "management inconsistencies" in the way Vernon's complaint about his PPR was handled. *See* Meyers July Dep. at 30. Normally, Port Authority employees have access to counseling and feedback on their performance, but Vernon's request to review his lowered PPR scores was summarily denied. When Meyers questioned Vernon's supervisors about the reasons for the lower scores, they articulated for the first time shortcomings in his performance that were not recorded in Vernon's PPR. *See* Meyers July Dep. at 30. Krishner became "defensive" when asked about his failure to record these job deficiencies in the PPR he wrote for Vernon. *See* Meyers Oct. Dep. at 27. From this evidence of Vernon's supervisor attempting to brush off Vernon's concern for his reduced scores, the jury may choose to believe that the PPR downgrade was a reprisal for filing a discrimination complaint and not for the reason that Port Authority maintains. Because a genuine issue of material fact exists as to whether Port Authority's reason is pretextual or not, the Court denies defendant's motion for summary judgment on plaintiff's Title VII and ADEA retaliation claims regarding the PPR downgrade.

### 2. *Failure to Promote*

Vernon is able to establish a prima facie case of retaliation for the denial of the promotion. He satisfies the first three prongs of the prima facie case, because he participated in a protected activity when he filed the complaint with the EEO, Port Authority was aware of this activity, and the denial of the promotion was an adverse employment action. A causal connection between the protected activity and the adverse action can also be shown. Vernon was denied the promotion only six months after the start of Port Authority's investigation into Vernon's complaint. The proximity in time between the start of Meyers's investigation and Port Authority's rejection of Vernon for the job reflects a nexus between the two events. *See DeCintio*, 821 F.2d at 115. Fulfilling the four prongs, Vernon has established a prima facie case of retaliation.

■ The burden shifts to Port Authority to provide a legitimate, nondiscriminato-

ry reason for rejecting Vernon for the position. Port Authority maintains that Vernon did not fulfill the basic job requirement of having a professional engineer's license and suffered several job deficiencies. Vernon has introduced evidence to refute these assertions. From Suros's memorandum and drawing all inferences in favor of the nonmoving party, the jury could decide that the "requirement" was merely a recommendation. *See* Suros Mem. Vernon can name two individuals working at higher levels than he who do not hold a license. Furthermore, Krishner only articulated Vernon's job deficiencies for the first time during Meyers's investigation. This additional evidence suggests that Port Authority's reasons could have been a pretext for retaliation. Because a genuine issue of material fact exists as to whether Port Authority's reasons are pretextual or not, the Court denies defendant's motion for summary judgment on plaintiff's Title VII and ADEA retaliation claims in regards to the failure to promote.

### IV. *Punitive Damages*

■ Vernon is seeking punitive damages against Port Authority for its willful, knowing, and intentional violation of his rights. Port Authority argues that Vernon is not entitled to punitive damages. Although the Second Circuit has not decided this issue, this Court has held that the Port Authority, as a government entity, is immune from punitive damages. *See Rose v. Port Auth. of N.Y. & N.J.*, 13 F.Supp.2d 516, 524 (S.D.N.Y.1998) (Leisure, J.). The Court reasoned that municipalities are immune from punitive damages, and as such, entities created by a bi-state compact, such as Port Authority, should be similarly immune. *See id.* (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). A number of courts have agreed. *See King v. Port Auth. of N.Y. & N.J.*, 909 F.Supp. 938 (D.N.J.1995), *aff'd*, 106 F.3d 385 (3d Cir.1996) (holding that regional transit authority is immune from punitive damages); *Bolden v. Southeastern Penn. Trans. Auth.*, 953 F.2d 807 (3d Cir.1991), *cert. denied*, 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992) (same); *Recreation World, Inc. v. Port Auth. of N.Y. & N.J.*, 1998 WL 107362, *12 (S.D.N.Y.1998) (holding that Port Authority is immune from punitive damages); *Shifa Serv. Inc. v. Port Auth. of N.Y. & N.J.*, 1997 WL 563301, *5 (S.D.N.Y.1997) (same); *Ryduchowski v. Port Auth. of N.Y. & N.J.*, 1998 WL 812633, *15 (E.D.N.Y.1998), *cert. denied*, 530 U.S. 1276, 120 S.Ct. 2743, 147 L.Ed.2d 1007 (2000) (same); *Brady v. Port Auth. of N.Y. & N.J.*, 1998 WL 724061, *3 (E.D.N.Y.1998) (same).[4] Therefore, the Court finds that Port Authority is immune from punitive damages, and the defendant's request to bar the plaintiff's punitive damages claim is granted.

### CONCLUSION

Defendant's request for summary judgment is HEREBY GRANTED with regard

---

**4.** Vernon cites to *Kondakjian v. Port Auth. of N.Y. & N.J.*, 1996 WL 280799 (S.D.N.Y.1996), to support his proposition that Port Authority is not immune from punitive damages. In *Kondakjian*, Magistrate Judge Eaton did not strike the claim for punitive damages against Port Authority. Relying on *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), he reasoned that municipalities were immune from punitive damages so as to avoid punishing all taxpayers, but because taxpayers were not liable for Port Authority's judgments, Port Authority was not immune. *Id.* 1996 WL 280799 at *1. The Court chooses not to follow this line of reasoning, because *Kondakjian* relies solely on *Hess*, a decision based on Eleventh Amendment immunity, presenting considerations from the question of a public authority's immunity from punitive damages. *See Ryduchowski*, 1998 WL 812633 at *14; *Shifa*, 1997 WL 563301 at *4.

to all claims based upon events that occurred prior to September 25, 1994, and such claims are HEREBY DISMISSED WITH PREJUDICE.

Defendant's request for summary judgment is HEREBY DENIED with regard to Plaintiff's Title VII and ADEA claims for discrimination and retaliation based upon the downgrade in his performance appraisal in January 1995 and the failure to promote him to Principal Environmental Engineer in March 1995.

Plaintiff's claim for punitive damages is HEREBY STRICKEN.

SO ORDERED.